# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JANET REED,                                           Case No. 1:19-cv-923
      Plaintiff,                                  Litkovitz, M.J.

vs.

COMMISSIONER OF                              **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff Janet Reed brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI).  This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the

Commissioner's response in opposition (Doc. 17), and plaintiff's reply (Doc. 18).

## I.      Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in September 2016, alleging

disability since September 8, 2015, due to low back pain (L3-5 and S1), a left ankle fracture, and

a right foot cuboid fracture.  (Tr. 375).  The applications were denied initially and upon

reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Renita K. Bivins.  Plaintiff and a vocational expert (VE)

appeared and testified at the ALJ hearing on October 18, 2018.  On December 14, 2018, the ALJ

issued a partially favorable decision, finding plaintiff disabled as of November 2018.[1]  (Tr. 32).

---

[1] The Court omits the specific date in November 2018, referenced in the ALJ's decision because it corresponds to plaintiff's birth date and is therefore personally identifiable information.

This decision became the final decision of the Commissioner when the Appeals Council denied review on October 11, 2019.

## II.     Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

**B.   The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act
> through June 30, 2017.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since the alleged
> onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. Since the alleged onset date of disability, September 8, 2015, [plaintiff] has
> had the following severe impairments: history of a left lower extremity fracture
> status post open reduction and internal fixation (ORIF); degenerative disc disease
> of the lumbar spine with spondylolisthesis, radiculopathy, and low back pain;
> degenerative disc disease of the cervical spine with radiculopathy; asthma; and
> obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. Since September 8, 2015, [plaintiff] has not had an impairment or combination
> of impairments that meets or medically equals the severity of one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that prior to

November . . . 2018, the date [plaintiff] became disabled, [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations.  [Plaintiff] was able to stand and/or walk for four hours per eight-hour workday and sit for six hours per eight-hour workday with normal breaks.  [Plaintiff] could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [Plaintiff] could occasionally balance, stoop, kneel, crouch, and crawl.  [Plaintiff] could perform occasional operation of foot controls, including pushing and pulling.  [Plaintiff] must avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants, such as fumes, odors, dust, and gases. [Plaintiff] must avoid all exposure to hazards, such as unprotected heights and heavy machinery.  Due to her medical conditions, symptoms, pain and limitations, she is expected to have been rendered off task eight percent of the work period.

6. After careful consideration of the entire record, the [ALJ] finds that beginning on November . . . 2018, [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations.  [Plaintiff] is able to stand and/or walk for four hours per eight-hour workday and sit for six hours per eight-hour workday with normal breaks.  [Plaintiff] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl.  [Plaintiff] can perform occasional operation of foot controls, including pushing and pulling.  [Plaintiff] must avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants, such as fumes, odors, dust, and gases.  [Plaintiff] must avoid all exposure to hazards, such as unprotected heights and heavy machinery.  Due to medical conditions, symptoms, and pain, [Plaintiff] will be off-task 15% of the work period and absent eight days per year after the probationary period.

7. Prior to November . . . 2018, [plaintiff] was capable of performing past relevant work as a customer service representative and customer service representative supervisor.[2]  This work did not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

8. Beginning on November . . . 2018, [plaintiff]'s residual functional capacity has prevented [plaintiff] from being able to perform past relevant work (20 CFR 404.1565 and 416.965).

---

[2] According to the transcript of the ALJ hearing, plaintiff's past relevant work was as a customer service representative supervisor (SVP 6, sedentary exertion level), a customer service representative (SVP 4, sedentary exertion level), and a gas station cashier (SVP 2, heavy exertion level).  (Tr. 81).

9. [Plaintiff] was an individual of advanced age on November . . . 2018, the established disability onset date (20 CFR 404.1563 and 416.963).

10. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11. [Plaintiff] does not have work skills that are transferable to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).[3]

12. Since November . . . 2018, considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13. [Plaintiff] was not disabled prior to November . . . 2018, (20 CFR 404.1520(1) and 416.920(f)) but became disabled on that date and has continued to be disabled through the date of this decision.  Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(g) and 416.920(g)).

14. [Plaintiff] was not under a disability within the meaning of the Social Security Act at any time through June 30, 2017, the date last insured (20 CFR 404.315(a) and 404.320(b))

(Tr. 19-32).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[3] The VE testified that plaintiff did not acquire transferable skills that could be used in light, semi-skilled jobs.  (Tr. 81).  The VE testified that plaintiff did acquire skills that could be used to perform the requirements of the following sedentary jobs: the job of a maintenance service dispatcher (SVP 3, sedentary exertion level) (7,700 jobs in the national economy) and the job of communication center operator (SVP 5, sedentary exertion level).  (Tr. 82).  The VE was cut off before offering the number of communication center operator jobs in the national economy.  (*Id.*).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Evidence and Opinions

#### 1. Treatment related to plaintiff's left and right ankle injuries

In September 2015, plaintiff fell down stairs and sustained a left tibia-fibula fracture and a right cuboid fracture. (Tr. 1428-29). She underwent an open reduction and internal fixation on her left ankle and her right ankle was set and splinted. (Tr. 1428).

In November and December 2015, plaintiff's orthopedic surgeon Todd Kelly, M.D., cleared her for full weightbearing out of a boot on her right ankle and gradually cleared to increase weightbearing on her left ankle from 50% to full.  (Tr. 803, 824).  In January 2016, Dr. Kelly noted that plaintiff ambulated with the use of a cane, placing full weight on her bilateral lower extremities.  (Tr. 842).  She had mild tenderness medially over her tendons but no tenderness laterally.  (*Id.*).  She had good plantar flexion and dorsiflexion near the right side and good strength with ankle plantar flexion and dorsiflexion.  (*Id.*).  Plaintiff's circulatory, sensory, and motor functions were all otherwise within normal limits and her incisions were well-healed. (*Id.*).  Imaging showed stable surgical hardware and some disuse osteopenia.  (*Id.*).  Plaintiff was instructed to complete physical therapy, progress off of her cane,  and follow-up as needed.  (Tr. 841-42).

Plaintiff completed physical therapy in February 2016, reporting that her ankle felt 99% improved with increased strength, ranges of motion, standing/walking tolerance, and ability to perform activities of daily living.  (Tr. 996-99).

### 2.     Primary care: Catherine LaRuffa, M.D.

Plaintiff has been a patient at Dr. LaRuffa's primary care office since 2013, and Dr. LaRuffa treated plaintiff from 2015 to at least late 2018.  (Tr. 1035-1425, 1840-1946, 2405-34, 2443-46).  In May and September of 2016, after plaintiff completed physical therapy, Dr. LaRuffa noted plaintiff ambulated with a normal gait without the use of an assistive device.  (Tr. 1046, 1070).

Over two years later, in October 2018, Dr. LaRuffa opined that plaintiff could sit no more than two hours per day, stand/walk no more than one hour per day, and lift no more than 10 pounds. (Tr. 2444). She opined that it would be reasonable for plaintiff to have to elevate her feet while seated in a reclined position for one-third to one-half the day, for plaintiff to be off-task 15% or more during the day, and for plaintiff to miss 10 or more days of work per month. (Tr. 2445-46). Dr. LaRuffa also indicated that plaintiff's issues would "preclude any potential for future employment." (Tr. 2446).

### 3. Spine treatment: Steven Agabegi, M.D.

In June 2016, plaintiff consulted with Steven Agabegi, M.D., an orthopedic spine specialist, with complaints of low back pain and occasional discomfort in her right leg. (Tr. 852-53). Plaintiff reported that she had experienced the pain for the past two years and it was getting worse. (*Id.*). She also reported that her pain was aggravated by sitting and standing and somewhat relieved by lying flat. (Tr. 853). On examination, Dr. Agabegi noted plaintiff had a very limited range of motion of her lumbar spine. (*Id.*). Radiographs showed mild degeneration at L5-S1. (*Id.*). Dr. Agabegi did not believe that plaintiff's condition required surgical intervention at that time, and he recommended physical—especially aquatic—therapy. (*Id.*).

The next month, July 2016, plaintiff again reported right leg pain with her lower back pain and reported that physical therapy was not yet beneficial. (Tr. 862). She noted that her leg pain was worse when sitting in a reclined chair with her legs up but that she also has pain when walking for prolonged periods of time. (*Id.*). On examination, plaintiff's neurologic exam was stable but a straight leg raise test was positive on the right side. (*Id.*). Plaintiff's x-rays showed

8

mild spondylolisthesis at L4-L5. (*Id.*). Dr. Agabegi noted that plaintiff continued to have a lot of pain and recommended an MRI of the lumbar spine. (*Id.*). Dr. Agabegi again noted that surgical intervention was unlikely to help, and in the meantime, he referred plaintiff to pain management for treatment, including possible injections. (*Id.*).

In August 2016, a lumbar spine MRI showed "mild to moderate multilevel lumbar degenerative disc disease with moderate facet arthrosis at L4-5, grade 1 anterolisthesis at L4-5, and no significant spinal stenosis or definite focal neural compression." (Tr. 661). At L5-S1, the MRI showed a minimal noncompressive diffuse disc bulge. (*Id.*). At L3-4, the MRI showed mild facet arthrosis and a relatively normal posterior disc contour. (*Id.*). At a follow-up visit related to the MRI later that month, Dr. Agabegi found that the MRI demonstrated "no significant stenosis that would warrant any kind of surgical intervention[,]" notwithstanding degeneration at L4-L5. (Tr. 882-83). He noted a painful range of motion in plaintiff's lumbar spine but no loss of sensation. (Tr. 883). He recommended epidural injections and pain management. (*Id.*).

#### 4. Pain management: Hammam Akbik, M.D.[4]

Plaintiff began treating with pain management specialist Dr. Akbik in October 2016 for her low back and leg pain. (Tr. 1815-32). Dr. Akbik treated plaintiff with epidural steroid injections at L4-L5 and plaintiff reported using marijuana. (Tr. 1815-32, 1950-74). Dr. Akbik would not prescribe opioid medication because plaintiff had opted to instead use marijuana for pain relief. (Tr. 1823). In December 2016, neither Tylenol #3 nor Gabapentin relieved her pain.

---

[4] There is some inconsistency in the spelling of Dr. Akbik's first name. (*Compare* Tr. 2345 *with* Tr. 28). The Court uses the spelling used in the medical records from Dr. Akbik's practice.

(Tr. 1818). An injection in November 2016 provided significant (95%) but only fleeting (approximately one week of) relief; an injection in January 2017 provided less relief (30%) for a shorter period of time (a couple of days). (Tr. 1968). In February 2017, she reported improvement with pain medication, rest, lying down, and position change but also that Neurontin and Tylenol #3 were ineffective. (Tr. 1970). In October 2017, plaintiff reported that a March 2017 sacroiliac injection provided 75% relief for 12 days and that two May 2017 medical branch nerve blocks gave 75% relief. (Tr. 2285; *see also* Tr. 2318). Two medical branch nerve blocks in October and December of 2017 provided 50% relief. (Tr. 2436). In notes from visits between December 2016 and February 2018, plaintiff reported that unspecified medications improve her pain on a visual analog scale of pain from 8/10 to 3/10 or 4/10. (*See* Tr. 1818, 1829, 1968, 2269, 2285, 2306, 2318).

In June 2017, Dr. Akbik completed a questionnaire wherein he indicated that plaintiff's chronic pain would cause significant impairment to her ability to maintain normal focus, attention, and concentration such that she would be off task 15% or more of the time. (Tr. 2077). He also opined that plaintiff would need to spend as much as one-third of a typical day in a reclined position and would miss more than five days of work per month. (Tr. 2076-77).

In March 2018, Dr. Akbik and Julie Lanter, his PA-C (physician assistant-certified), completed a supplemental questionnaire. (Tr. 2266-68). They noted that the diagnosis of radiculopathy is supported by plaintiff's reports of intermittent numbness/tingling in plaintiff's right thigh and skin, which could be caused by her foraminal narrowing at L4-5 secondary to spondylolisthesis and facet arthropathy. (Tr. 2266). They reiterated that sitting in a reclined

10

position for up to one third of a typical day "will off load axial compression of the facet joints easing pressure[.]"  (Tr. 2267).

In July 2018, when seen by Ms. Lanter, plaintiff rated her pain at 3/10.  (Tr. 2440).  At that time, plaintiff was able to walk on heels and toes without difficulty, she exhibited 5/5 strength bilaterally throughout lower extremities, and her straight leg raise test was negative bilaterally.  (Tr. 2441).  Ms. Lanter also noted, however, severe right and moderate left paraspinal tenderness of her lumbar spine on palpation, limited flexion and extension due to pain, bilateral facet tenderness at L4-L5 and L5-S1, positive facet loading on the left, and decreased sensation in the right lateral thigh and calf.  (Tr. 2441).   She noted diffuse muscle spasms bilaterally of her cervical spine on palpation with greater tenderness in the right than left paraspinals, positive facet exam with bilateral tenderness at C4-C5 and C5-C6, limited range of motion in rotation with pain on the right, decreased sensation to light touch in the right biceps relating to the C5-C6 dermatome, and an absent triceps reflex on the right.  (*Id.*).

In August 2018, when seen by Ashley Engel, a nurse practitioner with Dr. Akbik's practice, plaintiff rated her pain at 7/10 (Tr. 2436), but she also exhibited normal gait, 5/5 strength in her bilateral extremities, and her straight let raise test was negative bilaterally.  (Tr. 2438).  As Ms. Lanter had the prior month, Ms. Engel noted severe right and moderate left paraspinal tenderness of her lumbar spine on palpation, limited flexion and extension due to pain, bilateral facet tenderness at L4-L5 and L5-S1, positive facet loading on the left, and decreased sensation in the right lateral thigh and calf.  (Tr. 2438).  As to plaintiff's cervical spine,  Ms. Engel's examination notes were identical to Ms. Lanter's from the prior month except that Ms.

Engel did not observe diffuse muscle spasms or an absent triceps reflex.  (*Id.*).  Dr. Akbik signed

off on a plan for plaintiff, which included a medical branch nerve block at L4-S1, potential

selective nerve root block injection at right L5, potential epidural injections at C5-C6, Mobic,

Neurontin, Flexeril, and use of a TENS unit with compound cream.  (Tr. 2438-39).

### 5.    State Agency Review

In December 2016, Mehri Siddiqui, M.D., reviewed the record and found that plaintiff

could lift and carry 20 pounds occasionally and 10 pounds frequently; and stand, walk, and/or sit

for about six hours in an eight-hour workday.  (Tr. 383).  She limited plaintiff to occasionally

climbing ramps/stairs, balancing, crouching, kneeling, stooping, or crawling but never climbing

ladders/ropes/scaffolds.  (Tr. 383-84).  In May 2017, Venkatachala Sreenivas, M.D., reviewed

plaintiff's file upon reconsideration and affirmed Dr. Siddiqui's assessment, except that she

limited plaintiff to standing or walking for four hours in an eight-hour workday and added

environmental limitations on exposure to hazards.  (Tr. 410-12).

In March 2018, Deborah Wafer, M.D., a medical consultant, reviewed plaintiff's file and

opined that plaintiff had the residual functional capacity (RFC) for light work.  (Tr. 2403).  She

determined that plaintiff had postural restrictions to occasionally climb ramps/stairs, balance,

crouch, kneel, stoop, and crawl, but plaintiff could never climb ladders/ropes/scaffolds.  (Tr.

2398).  Dr. Wafer also found that plaintiff must avoid concentrated exposure to extreme cold,

fumes, odors, dusts, gases, poor ventilation, and hazards due to her history of asthma.  (Tr.

2400).

**E.      Specific Errors**[5]

On appeal, plaintiff first argues that the ALJ "mischaracterized much of the evidence of record relating to her disability prior to November 2018 and very selectively pulled things out of context from the record"—resulting in an RFC assessment that is not supported by substantial evidence.  (Doc. 11 at PAGEID 2544).  Plaintiff next argues that the ALJ improperly weighed the treating source opinions of her pain management physician, Dr. Akbik, and her primary care physician, Dr. LaRuffa.  Finally, plaintiff argues that the ALJ's RFC determination from the period of time from plaintiff's onset date of disability through November 2018 is not supported by substantial evidence.  Rather, plaintiff argues that the ALJ made an arbitrary distinction between this period and post-November 2018, which corresponds to the fact that plaintiff moved into the "advanced age" category as of that date.

**1.      Weight assigned to treating physicians**[6]

The Court begins with plaintiff's second assignment of error.  Plaintiff argues that the ALJ improperly evaluated the opinions of plaintiff's treating physicians, Dr. LaRuffa and Dr. Akbik, and improperly substituted her own opinion for a medical opinion offered by Dr. Akbik.  In the alternative, even if the Court were to find that the opinions of Dr. LaRuffa and Dr. Akbik were not entitled to controlling weight, plaintiff argues that the ALJ failed to demonstrate that

---

[5] Plaintiff's arguments concern the ALJ's evaluation of her lumbar and cervical spine conditions; therefore, plaintiff has waived any challenges regarding her other conditions.  *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

[6] Section 404.1527, which sets out the treating physician rule, has been amended for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  This amendment does not apply to plaintiff's claims, which she filed in 2016.

she weighed the opinions in a manner consistent with regulatory dictates.  *See* 20 C.F.R. §§
404.1527(c)(2)-(6).[7]

It is well-established that the findings and opinions of treating physicians are entitled to
substantial weight.  "In general, the opinions of treating physicians are accorded greater weight
than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*,
127 F.3d 525, 530-31 (6th Cir. 1997) (citation omitted).  *See also Harris v. Heckler*, 756 F.2d
431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are
generally accorded substantial deference, and if the opinions are uncontradicted, complete
deference.") (citation omitted).  "The treating physician doctrine is based on the assumption that
a medical professional who has dealt with a claimant and his maladies over a long period of time
will have a deeper insight into the medical condition of the claimant than will a person who has
examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v.
Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (citation omitted).

"Treating-source opinions must be given 'controlling weight' if two conditions are met:
(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic
techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]
case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20
C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ
declines to give a treating source's opinion "controlling weight," the ALJ must balance the

---

[7] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are
found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-
281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007)).  The Court's references to DIB regulations should be read to incorporate the corresponding and identical
SSI regulations for purposes of this Order.

14

factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature, and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting C.F.R. § 404.1527(c)(2)). This requirement exists so that claimants will understand the disposition of their cases, the ALJ will apply the treating physician rule, and the district court can conduct a meaningful review. *See Wilson*, 378 F.3d at 544-45 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) and *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)). An ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). There is no requirement, however, that the ALJ expressly consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (dismissing argument that an ALJ must address each of the regulatory factors in evaluating the opinion of a treating physician).

15

a.  Dr. Akbik

The ALJ afforded only "limited" and not controlling weight to Dr. Akbik's June 2017 opinion because it was "not well-supported by diagnostic test results or clinical signs."  (Tr. 28). The ALJ specifically pointed to Akbik's opinion that plaintiff would "need to spend as much as one third of a typical day in a reclined position" and would be off task 15% or more of a typical day (*see id.*, citing Tr. 2076-77)—remarking that no objective evidence supported these opinions. The ALJ also highlighted that the opinion was "not entirely consistent" even "with [Dr. Akbik's] own subsequent examinations. . . ."  (*Id.*).  As support, the ALJ cites records from Dr. Akbik's office, following this June 2017 opinion, evidencing no pain behaviors, a 3/10 pain rating, normal strength in her bilateral upper and lower extremities and 5/5 strength, a negative straight leg raise test, and the ability of plaintiff to walk on her heels and toes without difficulty.  (*See* Tr. 28, citing Tr. 2440-41).

The ALJ next noted that Dr. Akbik's June 2017 opinion was "inconsistent with other substantial evidence on record" and cited moderate treatment (non-opioid medication, occasional injections, and physical therapy), the efficacy of those treatments, the mild nature of lumbar findings, and the lack of cervical abnormalities.  (Tr. 28).  The ALJ remarked that there was a "lack of any cervical abnormalities on the lone EMG study[,]" there were "largely normal clinical findings" from all providers other than Dr. Akbik's practice in the record, and plaintiff's activities since the alleged onset date point to less severity in plaintiff's condition than alleged. (*Id.*).

16

Finally, the ALJ was not persuaded otherwise by Dr. Akbik's supplemental opinion offered in March 2018. (*See* Tr. 28-29; 2266-68). This opinion was provided in response to plaintiff's counsel's supplemental questionnaire, which asked Dr. Akbik why he had diagnosed lumbar radiculopathy without an MRI showing significant stenosis or definite focal neural compression. (Tr. 2266). The ALJ dismissed this supplemental opinion as not based on clinical findings and, instead, supported by plaintiff's subjective complaints and a "brief . . . theoretical" explanation of why she might experience her symptoms. (Tr. 28). The ALJ also found a lack of documented "neuromotor deficits that would corroborate [plaintiff's] radicular symptoms in the right lower extremity to the degree that would support [Dr. Akbik's] opinion." (Tr. 28-29).

Plaintiff argues that the ALJ "nebulous[sly]" and improperly accorded only "limited weight" to Dr. Akbik's two opinions and did not properly apply 20 C.F.R. § 404.1527(c).[8] (Doc. 11 at PAGEID 2555). Plaintiff contends that the evidence cited by the ALJ is selective and misleading—leaving out many other portions of the record that demonstrate objective medical findings consistent with Dr. Akbik's opinion. On July 18, 2018, Ms. Lanter, a PA-C with Dr. Akbik's practice, noted lumbar spine examination findings of severe right and moderate left paraspinal tenderness, limited range of motion due to pain, bilateral facet tenderness at L4-L5 and L5-S1, positive facet loading on the left, and decreased sensation in the right lateral thigh and calf. (Tr. 2441). As it related to plaintiff's cervical spine, she noted diffuse muscle spasms bilaterally on palpation, tenderness in the right paraspinals, a positive facet exam with bilateral

---

[8] In her opening brief, plaintiff also relied on SSR 96-2p, 1996 WL 374188 ("Giving Controlling Weight to Treating Source Medical Opinions"), but she then concedes the possibility that the agency rescinded this ruling—regardless of the date of the filing of plaintiff's claim—effective March 27, 2017. (*See* Doc. 17 at PAGEID 2592 n. 6; Doc. 18 at PAGEID 2609 n.2). Given plaintiff's concession, the Court makes its decision without reference to SSR 96-2p.

tenderness at C4-C5 and C5-C6,[9] limited range of rotational motion with pain on the right, decreased sensation to light touch in the right biceps related to C5-C6, and an absent triceps deep tendon reflex.  (*Id.*).  Plaintiff also argues that her treatments were more significant than the ALJ suggests, including multiple injections, Mobic, Flexeril, Neurontin, and TENS Unit with compounded pain cream.  (*Id.*).  Finally, plaintiff argues that the ALJ's discounting of Dr. Akbik's supplemental opinion was also improper because the ALJ ignored clinical findings and diagnostic tests that supported the opinion and substituted her own personal, medical opinion for Dr. Akbik's as related to plaintiff's radicular symptoms.

The Commissioner responds primarily by reciting the evidence cited by the ALJ to support her decision to not give Dr. Akbik's opinion controlling weight and argues that the ALJ was not required to address every potentially contradictory piece of evidence in the record.  The Commissioner argues that the fact that the ALJ discussed records specifically cited in plaintiff's counsel's post-hearing brief, which catalogued physical examination findings by Dr. Agabegi and Dr. Akbik's practice beginning in 2016, implies the ALJ in fact considered the evidence therein that was more favorable to plaintiff.  The Commissioner also argues that the ALJ's decision must be affirmed if supported by substantial evidence, even if the evidence could also support a different result.  Finally, the Commissioner argues that the ALJ did not substitute her own medical judgment for that of Dr. Akbik but rather considered the supportability of his opinion as is instructed by 20 C.F.R. §§ 404.1527(b), (c)(3).

---

[9] The ALJ does note that Dr. Akbik's practice noted "tenderness[,]" but did not reference its severity or any of the other findings consistent with plaintiff's subjective reports of pain.  (Tr. 28).

The Court finds that the ALJ's decision to discount Dr. Akbik's opinion is not supported by substantial evidence. The ALJ declined to give controlling weight to Dr. Akbik's opinion finding it was "not well-supported by diagnostic test results or clinical signs" and citing, in support, select findings from plaintiff's July and August 2018 treatment visits. (Tr. 28).[10] However, as it relates to lumbar spine complaints, records throughout Dr. Akbik's treatment of plaintiff and prior to his first opinion reflect clinical findings, such as positive straight leg tests, spasms, tenderness, and limited/painful range of motion that support plaintiff's alleged symptoms, as summarized in plaintiff's counsel's post-hearing brief. (*See* Tr. 645-51). Similar clinical findings are in the record prior to Dr. Akbik's second opinion. (*See, e.g.,* Tr. 2441 (July 18, 2018, visit) (severe right and moderate left paraspinal tenderness, limited range of motion due to pain, bilateral facet tenderness at L4-L5 and L5-S1, positive facet loading on the left, and decreased sensation in the right lateral thigh and calf)). As it relates to cervical spine complaints, Dr. Akbik's records also reflect clinical findings supporting plaintiff's subjective complaints prior to both of his opinions. (*See, e.g.,* Tr. 2321 (June 13, 2017, visit) (showing right facet tenderness and limited range of motion in all planes, with decreased dermatomal sensation in right triceps and ulnar border); Tr. 2310 (April 5, 2017, visit) (same); Tr. 2441 (July 18, 2018, visit) (diffuse muscle spasms bilaterally on palpation, tenderness in the right paraspinals, a positive facet exam with bilateral tenderness at C4-C5 and C5-C6, limited range of rotational motion with pain on the right, decreased sensation to light touch in the right biceps related to C5-C6, and absent triceps deep tendon reflex)). *See Jones v. Sec'y, Health and Human Servs.*, 945

---

[10] For example, the ALJ cites to plaintiff's pain rating of 3/10 in July 2018 but ignores the progress notes the following month showing plaintiff's pain rating of 7/10. (*Compare* Tr. 2440 *with* Tr. 2436).

F.2d 1365, 1369-1370 (6th Cir. 1991) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm, and sensory and motor disruption).

Dr. Akbik's records also reflect that he considered plaintiff's MRI results prior to rendering his opinions, which reflected "[m]ild to moderate multilevel lumbar degenerative disc disease with moderate facet arthrosis at L4-L5, grade I anterolisthesis at L4-L5." (*See* Tr. 2322) (notes from June 13, 2017 visit). In his supplemental opinion, Dr. Akbik remarked that plaintiff "has foraminal narrowing at L4-L5 secondary to spondylolisthesis and facet arthropathy." (Tr. 2266). He also had the benefit of a cervical MRI completed on July 12, 2017, which showed advanced, multilevel degenerative changes and fairly significant stenosis at C4-5, C5-6, and C6-7. (Tr. 2093). (*See also* Tr. 2289) (referencing review of this MRI). The ALJ notes the "lack of any cervical abnormalities on the long EMG study" in discounting Dr. Akbik's opinions but ignores the significant findings of the cervical MRI. (Tr. 28). The EMG findings alone do not demonstrate that Dr. Akbik's opinion is not supported by other clinical findings and diagnostic techniques. *Cf. Hill v. Berryhill*, No. 3:16-cv-174, 2017 WL 3332238, at *2 (S.D. Ohio Aug. 4, 2017) ("[A] treating source opinion need not be entirely consistent with other evidence of record for it to be afforded controlling weight; rather, the opinion must only '*not* [be] *inconsistent* with the other substantial evidence in [a claimant's] case record.'") (quoting 20 C.F.R. § 404.1527(c)(2)).

As to Dr. Akbik's opinion related to plaintiff's radicular symptoms, the ALJ's decision to discredit it constitutes error. "[A]n ALJ 'may not substitute [her] own medical judgment for that

of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Meece v. Barnhart*, 192 F. App'x. 456, 465 (6th Cir. 2006)). *See also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). In *Simpson*, the Sixth Circuit found that an ALJ's conclusion that it was "inconceivable that a claimant who has had pain due to pelvic adhesions with otherwise normal examination would be completely unable to move or do anything at all" constituted "a medical judgment the ALJ was not qualified to make." 344 F. App'x at 194. Likewise, here, the ALJ's conclusion that the record does not "document neuromotor deficits that would corroborate [plaintiff's] radicular symptoms in the right lower extremity *to the degree that would support [Dr. Akbik's] opinion*" represents an improper medical judgment by the ALJ. (Tr. 28-29) (emphasis added). Notwithstanding the Commissioner's argument to the contrary, this comment is not an assessment of how supportable the opinion is but rather the ALJ's own estimation whether certain clinical findings meet a necessary threshold for a diagnosis—a determination beyond the scope of an ALJ's function.

Based on the above, the Court finds that Dr. Akbik's opinions are well-supported by clinical findings and diagnostic techniques for purposes of the first prong of the treating physician rule. The Court finds that the ALJ selectively cited to portions of the medical record to discredit Dr. Akbik's opinion, when in fact, the record contains numerous objective and clinical findings that corroborate plaintiff's subjective complaints. *See Germany-Johnson v. Comm'r of Social Sec.*, 313 F. App'x. 771, 777 (6th Cir. 2008) (noting the ALJ "was selective in parsing the

various medical reports"). *See also Houston v. Comm'r of Soc. Sec.*, No. 1:17-cv-207, 2018 WL 4693945, at *8 (S.D. Ohio Sept. 29, 2018) (an "ALJ's incomplete recitation of the evidence is not a good reason to discount" a treating physician's opinion).

The second prong of the treating physician rule requires the ALJ to confirm that the treating physician's opinion is not inconsistent with the other substantial evidence in the record. As it relates to plaintiff's lumbar complaints, the ALJ stated: "[c]linical exams have overwhelmingly reported no signs of distress or pain behaviors with normal neuromotor findings in the lower extremities. . . ." (Tr. 25). The records cited to support this conclusion, however, are not as inconsistent with Dr. Akbik's findings as the ALJ's summary suggests. For example, as it relates to plaintiff's lumbar spine complaints, the records that the ALJ cites also reference plaintiff's "very limited" and "painful" range of motion, a positive straight leg test on the right side, mild spondylolisthesis, back tenderness, moderate perivertebral LS spasms, decreased range of motion, marked lordosis, significant tenderness around the right SI joint, tenderness over the right piriformis recess, and a straight leg raise eliciting worsening back pain and sciatica symptoms. (Tr. 852-53, 862, 882-83, 1055, 1063, 1571) (records of Drs. Agabegi, Dr. LaRuffa, and emergency-room physician Dustin LeBlanc, M.D.).

As it relates to plaintiff's cervical spine complaints, the ALJ found that "clinical findings by [plaintiff's] orthopedic spine specialist, hand surgeon, and primary care practice have been largely unremarkable in regards to the cervical spine" and noted Dr. Akbik's practice as a "lone outlier. . . ." (Tr. 25). Again, the records cited to support this conclusion also contain findings consistent with cervical abnormalities. Dr. Agabegi noted that the cervical MRI showed "fairly

22

significant stenosis at C4-5, C5-6 and C6-7. C5-6 on the right side, especially in the forearm is very tight and she has central stenosis at C6-7. C4-5 shows milder foraminal stenosis." (Tr. 2086). He also noted that plaintiff had "pain with extension and mildly positive Spurling's that radiates down into her right upper extremity into the upper arm area. . . ." (Tr. 2086). Finally, he noted "significant degenerative changes in the lower cervical spine. . . ." (Tr. 2108). Dr. Wigton, plaintiff's hand surgeon, recorded a "positive Spurling sign for radiation into her right shoulder and upper arm." (Tr. 2136). He also noted "some cervical findings. . . ." (*Id.*). Dr. LaRuffa noted in her history of present illness that plaintiff "need[s] a referral for her arm[,] [i]ntermittent numbness right arm from neck to 3-4-5ᵗʰ digits." (Tr. 2341). These findings are not inconsistent with Dr. Akbik's findings.

The Commissioner also points to plaintiff's moderate level of treatment, the fact that injection treatments were somewhat effective, the mild nature of plaintiff's lumbar findings, and plaintiff's varied daily activities. First, the Court does not find that substantial evidence of record reflects moderate treatments. The ALJ referred to "occasional injection-based therapies" and the "efficacy" of her treatment regimens. Notes from an August 2018 visit to Dr. Akbik's practice document seven injections (Tr. 2436) with varying degrees of only partial and short-term (less than one month) relief. Dr. Akbik also anticipated several more injections, continuing Mobic, Flexeril, Neurontin, and her TENS Unit with compounded pain cream, in addition to recommending aqua therapy. (Tr. 2438). This does not support the ALJ's finding of only "moderate" treatment that is inconsistent with Dr. Akbik's opinion. The ALJ also cites Dr. Akbik's opinion as inconsistent with the "mild nature of the lumbar imaging findings. . . ." (Tr.

28).  But the Court does not find that "mild . . . findings" in and of themselves are substantial evidence in the record with which Dr. Akbik's opinion is inconsistent.  As noted above, other physicians documented clinical findings consistent with lumbar spine pain notwithstanding these "mild . . . findings."  *See supra* p. 22.  Finally, while the evidence of plaintiff's daily activities could lead to different conclusions in the context of the ALJ's symptom-consistency evaluation, the Court cannot conclude that plaintiff's activities of daily living constitute substantial evidence of record contrary to Dr. Akbik's opinion such that it would be appropriate to discount his treating physician's opinion.  As summarized in plaintiff's statement of errors, plaintiff's testimony as to her activities of daily living demonstrates marked limitations and references the need for assistance with many daily activities.  (*See* Doc. 11 at PAGEID 2548-49).

Even if the Court were to conclude, however, that plaintiff's activities of daily living or other record evidence was substantial and inconsistent with Dr. Akbik's opinion, the ALJ was required to balance the 20 C.F.R. §§ 404.1527(c)(2)-(6) factors to determine what weight to afford Dr. Akbik's opinion.  *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  The ALJ's decision does not specifically reference these factors.  The ALJ omits the fact that plaintiff had been with Dr. Akbik's practice, specializing in pain management (closely related to her lumbar and cervical spine issues) for over two years and was seen frequently.  *See* 20 C.F.R. §§ 404.1527(c)(2)(i), (c)(5).  Dr. Akbik also administered numerous injections during this period of time.  *See* 20 C.F.R. § 404.1527(c)(2)(ii).  Dr. Akbik had the benefit of reviewing both plaintiff's lumbar and cervical MRIs.  As discussed above, Dr. Akbik's opinions were supported by his clinical findings and not inconsistent with other medical opinions of record based on the same

24

diagnostic tests.[11]  Supportability and consistency are part of the 20 C.F.R. §§ 404.1527(c)(2)-(6)

analysis, but they are relevant also to the controlling weight test and therefore do not reliably

indicate that the ALJ separately considered the appropriate weight to give Dr. Akbik's opinion

under these regulatory factors.  Accordingly, the ALJ did not provide good reasons for the

weight afforded to Dr. Akbik's opinion and the Court cannot meaningfully review her decision

in this respect. *See Cole*, 661 F.3d at 937.  Plaintiff's second assignment of error will be

sustained as to Dr. Akbik.

> b.  Dr. LaRuffa

The ALJ found that Dr. LaRuffa's opinion was entitled to only "some, not controlling

weight" because it was "not well-supported by diagnostic test results and clinical signs."  (Tr.

27).  Specifically, the ALJ noted that the only objective evidence relied upon for her opinion was

plaintiff's lumbar spine MRI, based on which Dr. Agabegi (a spine specialist) found no

significant stenosis.  (Tr. 27).  The ALJ also noted that Dr. LaRuffa did not cite clinical lumbar

or cervical abnormalities to support her opinion.  (*Id.*).  The ALJ further found that Dr. LaRuffa's

opinion was inconsistent with other substantial evidence of record, including:

> the moderate level of treatment for [plaintiff's] spine impairments, the reports
> regarding the efficacy of treatment for her reports of pain, the mild nature of the
> lumbar imaging findings as previously noted, the lack of cervical abnormalities on
> the lone EMG study on record, the lack of clinically documented
> attention/concentration deficits throughout the record despite Dr. LaRuffa's
> indication that [plaintiff] has extreme limitations in this area, the relatively normal
> clinical findings recorded by all medical providers outside of the claimant's pain
> clinic (this includes clinical exams from Dr. LaRuffa and other medical providers
> in her primary care practice), and the claimant's activities since the alleged onset
> date.

---

[11] Plaintiff also contrasts Dr. Akbik's opinion with those of Drs. Siddiqui and Sreenivas, who did not review
plaintiff's cervical spine MRI.

(Tr. 28).

In her reply brief, plaintiff states that it is her position that Dr. LaRuffa's opinion is entitled to controlling weight. (*See* Doc. 18 at PAGEID 2609). In her statement of errors, however, plaintiff substantively argues only that Dr. LaRuffa's opinion was entitled to "great" weight under the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6) and does not apply the controlling weight test to her opinion. (*See* Doc. 11 at PAGEID 2564-65). The Court finds that plaintiff has waived the argument that Dr. LaRuffa's opinion was entitled to controlling weight by failing to develop it either legally or factually in the Statement of Errors. *See Fagin ex rel. B.P. v. Comm'r of Soc. Sec.*, No. 1:10-cv-813, 2012 WL 213801, at *11 n.1 (S.D. Ohio Jan. 24, 2012), *report and recommendation adopted sub nom. Fagin v. Comm'r of Soc. Sec.*, 2012 WL 481787 (S.D. Ohio Feb. 14, 2012)) (holding that a moving party may not raise new issues for the first time in its reply brief) (citations omitted).[12]

Plaintiff has preserved, however, the argument that the ALJ failed to carry out the balance of the regulatory analysis to be applied to Dr. LaRuffa's opinion where it was not afforded controlling weight. In particular, plaintiff notes that Dr. LaRuffa had a more than three-year treatment relationship with plaintiff at the time that she gave her opinion, Dr. LaRuffa was familiar with plaintiff's lumbar and cervical spine complaints (*see* Tr. 2443-44) (Dr. LaRuffa's opinion referencing lumbar and cervical MRIs), and Dr. LaRuffa prescribed Gabapentin for neuropathic pain. (*See* Tr. 2443). Dr. LaRuffa's treatment records note certain instances of abnormalities, (*see, e.g.,* Tr. 1059 ("tenderness; right perivertebral LS spasms, decreased

---

[12] Plaintiff also does not appear to challenge Dr. LaRuffa's general opinion about plaintiff's ability to work, which the ALJ afforded little weight. (Tr. 28).

ROM"); 1849 ("tenderness and limited ROM; pt. has pain with movement of right

arm/shoulder."); Tr. 1852 (assessing spondylolisthesis, which was present in plaintiff's lower

back imaging); Tr. 1868 (noting back tenderness); Tr. 1875 ("moderate perivertebral LS spasms,

decreased ROM, marked lordosis"); Tr. 1893 (noting a wide-based gait)), but they also show

some normal musculoskeletal findings and normal gait (*see, e.g.,* Tr. 1848, 1855, 1862, 1878

("ambulating normally"), Tr. 1852 ("normal tone and motor strength . . . normal movement of all

extremities"), Tr. 1885 ("normal movement of all extremities . . . normal gait and station")).

Nevertheless, the ALJ did not specifically discuss the 20 C.F.R. §§ 404.1527(c)(2)-(6)

factors in assessing the weight to accord Dr. LaRuffa's opinion. The Commissioner argues that

the ALJ's analysis of Dr. LaRuffa's opinion, referenced above, includes review of its consistency

and supportability for purposes of 20 C.F.R. §§ 404.1527(c)(3)-(4). While supportability and

consistency are two regulatory factors the ALJ must consider in weighting a treating physician's

opinion, the ALJ's discussion of those factors alone fails to show the ALJ considered the other

regulatory factors in weighting Dr. LaRuffa's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6).

Moreover, Dr. LaRuffa's opinion is not "so patently deficient that the Commissioner could not

possibly credit it." *Wilson*, 378 F.3d at 547. As such, the Court finds that plaintiff's second

assignment of error will also be sustained as to Dr. LaRuffa.[13]

---

[13] In reply to the Commissioner's argument that the ALJ properly assessed the opinions of the non-treating and non-examining state agency physicians, plaintiff argues that these opinions were given less scrutiny than those of the treating physicians. *See Gayheart*, 710 F.3d at 379 ("A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires. See 20 C.F.R. § 404.1527(c)."). Because the Court finds that plaintiff's second assignment of error should be sustained as to both treating physicians, the Court does not address this argument.

2.      **The ALJ mischaracterized evidence related to the consistency of plaintiff's subjective symptoms with other evidence in the record.**

Plaintiff identifies several specific examples of ways in which the ALJ mischaracterized the record to support her RFC determination.  In particular, the alleged errors relate to the manner in which the ALJ evaluated the consistency of plaintiff's subjective symptoms as compared with the rest of the record.  It is not necessary to address plaintiff's argument that the ALJ improperly assessed her subjective complaints and symptoms because the ALJ's reconsideration of this matter on remand may impact the remainder of the ALJ's sequential analysis, including the assessment of the consistency of plaintiff's subjective symptoms with the record.  *See Trent v. Astrue*, No. 1:09-cv-2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011).  In any event, even if this assignment of error had merit, the result would be the same, i.e., remand for further proceeds and not outright reversal for benefits.  *See Norris v. Comm'r of Soc. Sec.*, No. 1:15-cv-362, 2016 WL 2636310, at *13 (S.D. Ohio May 6, 2016), *report and recommendation adopted*, 2016 WL 3228399 (S.D. Ohio June 13, 2016).

3.      **The ALJ's determination regarding plaintiff's RFC between the alleged onset date through November 2018 is not supported by substantial evidence.**

Plaintiff's final assignment of error relates to the ALJ's cursory decision to find plaintiff disabled as of her birthdate in November 2018.  In a post-hearing letter, plaintiff's counsel alerted the ALJ to the fact that plaintiff would undergo surgery on her left ankle on December 21, 2018, and would likely need a full ankle replacement the following year.  (Tr. 652-53).  Without obtaining corroborating medical documentation, the ALJ concluded that this would render plaintiff "off-task 15% of the work period and absent eight days per year after the

probationary period."  (Tr. 29).  Though the surgery was not scheduled until December 21, 2018, the ALJ indicated that this revised portion of her opinion would be effective November 2018, "to accommodate the significantly increased levels of pain and medication side effects while she copes with two upcoming ankle surgeries."  (Tr. 30).

Plaintiff argues that the ALJ based this revised portion of her decision on the fact that plaintiff had entered the "advanced age" category as of the specific November 2018 date of her birth, rendering her disabled under 20 C.F.R. § 404, Subpart P, App. 2, Rule 202.06.  (*See also* Tr. 31-32).  As such, plaintiff argues that the upward adjustment to plaintiff's off-task percentage and absentee figures post-November 2018 highlights the arbitrary nature of the ALJ's RFC decision pre-November 2018.  Put differently, plaintiff argues that the arbitrary manner in which the ALJ adjusted the off-task and absentee figures post-November 2018 demonstrates that the pre-November 2018 figures were not based on substantial evidence.  The Commissioner offers no response to (or acknowledgement of) this argument.

The Court is unable to discern from the ALJ's decision the evidentiary basis for her conclusion that plaintiff will be off work "8%" of the pre-November 2018 work period but "15%" of the post-November 218 work period.  There is likewise no evidentiary basis for her conclusion that, post-November 2018, plaintiff would be "absent eight days per year after the probationary period."  (Tr. 29).  Thus, the Court sustains this assignment of error.  On remand, the ALJ must provide substantial evidence for her RFC determination, including any distinctions between pre- and post-November 2018.

**III.      This matter will be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including reevaluation of the opinions of Drs. Akbik and LaRuffa, reassessment of the consistency of plaintiff's symptoms with the record, and reassessment of plaintiff's residual function capacity prior to November 2018, consistent with this decision.

**IT IS THEREFORE ORDERED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: ___2/12/2021_____

Karen L. Litkovitz
United States Magistrate Judge